ELLIS, Judge:
On March 18, 1977, two inmates escaped from the dog kennel area at Louisiana State Penitentiary at Angola. Following an investigation, Colonel Robert G. Bryan was demoted to the rank of major; Associate Warden Robert H. Butler, Sr. was suspended for five days; and Major Bertis E. Dixon was suspended for ten days. All three men timely appealed the disciplinary action taken against them to the Civil Service Commission. After a full hearing, the Commission granted the appeals, ordered the suspensions withdrawn and all three employees reinstated with all back pay and emoluments. The Department of Corrections has appealed from the action of the Commission.
The opinion of the Commission is as follows:
*156 “The facts as determined by the testimony are essentially as follows.
“There are several places at Angola where inmates are not under constant security supervision. They are not guarded at night nor on weekends. Such a place is the dog kennel. Here about eight prisoners work taking care of and training blood hounds. Several years ago, prisoners stationed here carried guns and acted as guards. This practice was discontinued as the result of a federal court order.
“On Saturday, March 18, 1978, Lieutenant Bobby F. Oliveaux, who was in direct charge of the dog kennel and who was off duty at the time, phoned the kennel to check upon the prisoners. He was informed that two of them were missing.
“Lieutenant Oliveaux returned to the prison and searched for the two inmates. It would not have been considered unusual for such inmates to be walking in the woods, fishing, or helping security officers with some special project.
“At 4:00 p. m., not having found the prisoners, he notified his immediate superior, Major Dixon, and the chase began. Two weapons, one belonging to Major Dixon and one belonging to Lieutenant Oliveaux were missing from a gun locker located at the kennel.
“All three of the appellants were accused of not taking steps to improve security of (or) recommend improvements in security at the dog kennel.
“These accusations are unfounded. The routine that was followed at the kennel was the same routine that was followed at several other locations at the prison. This routine had been followed for years. The warden, who had only been warden for a very short time, had informed Colonel Bryan that the policies of the previous warden would be continued. The only change that had been made was the matter of the inmates carrying guns.
“Lieutenant Oliveaux and Major Dixon kept their guns in a locked gun locker, at the kennel. These were kept there in order to be readily available in the event, of an escape. The state guns were kept in an armory some distance away.
“Colonel Bryan is also charged with storing an alcoholic beverage, one half pint of ‘White Lightning’, in a drawer at the dog kennel. Associate Warden Butler is charged with not disciplining Colonel Bryan for this.
“There is, in fact, no evidence to show that this half pint of ‘White Lightning’ was ever brought on the prison grounds.
“One Jim Poole had promised to bring some ‘White Lightning’ to Colonel Bryan in return for a favor that Bryan had done for him. Bryan had been told that the ‘White Lightning’ had been left for him at the kennel. He was conducting a hiring board at the time and could not pick up the whiskey. When he heard about the escape and that the escapees were apparently intoxicated, he immediately informed his superior concerning the ‘White Lightning’. He wanted the chase team to be informed as to the possible condition of the escapees.
“None of the witnesses ever saw the whiskey. Mr. Poole was never called as a witness. There was a bottle of rubbing alcohol missing from the kennel. This could be the cause of the prisoners seeming intoxicated condition.
“As to Associate Warden Butler, he had insufficient evidence on which to act. Before he could conduct an investigation, Deputy Warden John Whitley was assigned by the warden to conduct all investigations into the escape. This was a related matter and he properly thought it would be pursued by Whitley.
“Accordingly, these appeals are granted. It is directed that the suspensions be withdrawn and that the appellants be reinstated to their previous positions together with all back pay and emoluments of their positions.”
We find the opinion of the Commission to be fully supported by the evidence as to its factual determinations. We note that three of the Commissioners dissented from the opinion, on the following ground:
*157 “These appellants were in positions of authority and assisted in formulating security rules and regulations for Angola Penitentiary. In light of the Federal Court Orders the appellants should have removed these guns from the dog pen. Failure to receive a direct order does not relieve them as they should have acted in accordance with their responsibilities and compensation.”
There is nothing in the record to enlighten us as to the content of the Federal court order mentioned above. The record reveals that the only prison regulation relative to firearms required that they be kept in a secure locker. The evidence is to the effect that this was done.
The only specification of error not covered by our holding above is based on an allegation, in the Department’s brief, that the case was heard by six commissioners, who split evenly in their decision, and was then referred to a seventh commissioner, who cast the deciding vote. Civil Service Commission Rule 2.6 provides:
“Quorum and Voting.
“(a) Four (4) members of the Commission shall constitute a quorum for the transaction of business.
“(b) The concurrence of a majority of the members present shall constitute a ruling upon an item of business then before the Commission.
“(c) In the event of a tie vote the Commission may, in its discretion,
1. Refer a transcript of the record of the matter under consideration to one or more absent members, who shall then vote; or
2. Continue the matter for consideration at a later meeting.
“(d) Temporary absence during the consideration of an item of business shall not disqualify a member from voting on said item.”
The Department argues that Rule 2.6, which permits an absent Commissioner to cast the deciding vote in a case, is unconstitutional because it deprives the parties appearing before the Commission of a fair hearing. It claims that only the votes of the commissioners present should be counted, and that in the absence of a majority vote by them, the action of the appointing authority should be maintained. The Department cites no authority for the proposition that the participation in the decision making process by one who has not actually heard the testimony results in a deprivation of constitutional rights. Judges often decide cases which have been heard by commissioners or referees, who have no adjudicatory authority. The Constitution of this state provides that referees may be used to take testimony in cases to be decided by the Civil Service Commission. See Article 10, Section 12, Constitution of 1974. We fail to discern any deprivation of constitutional rights to due process in the procedure followed herein.
The rulings appealed from are hereby affirmed. The Department shall pay all costs for which it may be liable under the law.
AFFIRMED.